UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

Ronald Eugene Newman, Jr.,

　　　　　Petitioner,

vs.　　　　　　　　　　　　　　　　Case No.  3:06-cv-899-J-32MCR

United States of America,

　　　　　Respondent.

_____/

## <u>CORRECTED REPORT AND RECOMMENDATION</u>[1]

**THIS CAUSE** is before the Court on Petitioner's Motion pursuant to 28 U.S.C. §

2255 to Vacate, Set Aside or Correct Sentence (Doc. 1) filed August 21, 2006.  On July

10, 2007, Judge Corrigan entered an Order asking the undersigned to conduct an

evidentiary hearing and to issue a Report and Recommendation on the second ground

of Petitioner's Motion.  (Doc. 21).  The evidentiary hearing was held before the

undersigned on September 5, 2007.  The undersigned entered the original Report and

Recommendation on October 9, 2007.  (Doc. 36).  However, upon further review, it was

determined the original Report and Recommendation contained several incorrect dates.

Accordingly, the undersigned will vacate that Report and Recommendation and enter

the instant Corrected Report and Recommendation.

---

[1]  Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document.  Failure to file timely objections shall bar the party from a <u>de</u> <u>novo</u> determination by a district judge and from attacking factual findings on appeal.

## I.  Background

On November 18, 2004, the petitioner, Ronald Eugene Newman, Jr., was arrested on a federal warrant issued by the United States District Court for the Middle District of Florida.  (Doc. 28).  That same day, Roland Falcon, Esq., was appointed to represent Petitioner.  On May 12, 2005, a Superseding Indictment was entered charging Petitioner and a co-defendant with conspiracy to manufacture and possess with the intent to distribute 100 or more marijuana plants and manufacturing and aiding or abetting in the manufacture of 100 or more marijuana plants.  The co-defendant pled guilty and Petitioner proceeded to trial where a jury acquitted him of the charges in Count One but found him guilty of the offenses in Count Two.

On June 24, 2004, prior to his arrest in the federal marijuana case, Petitioner was arrested for driving under the influence and was charged in the County Court for Bradford County.  (Doc. 28).  Petitioner was initially charged with a misdemeanor driving under the influence, driving while license suspended or revoked and possession of a controlled substance, which is a felony.  (Tr. 68:17-22).[2]  The felony charge was ultimately dropped.  (Tr. 69:2-5).  William E. Davis was appointed to represent Petitioner in that case.  (Doc. 28).  While the federal case was still pending, on January 4, 2005, Petitioner pled guilty to the state DUI charge.[3]  Id.

---

[2]  References to the transcript of the evidentiary hearing conducted on September 5, 2007, will be "Tr. Page number : line number(s)."

[3]  Since that time, the state DUI conviction has been set aside on constitutional grounds. (Doc. 7, Ex.  1).  Petitioner successfully argued his attorney in the state DUI case was ineffective in that he never advised Petitioner of the adverse consequences of pleading guilty to the DUI
(continued...)

At sentencing for the federal case, Petitioner faced a statutory minimum mandatory sentence of 60 months.  Partly because of the state DUI conviction, the Court had no authority to sentence Petitioner below the minimum mandatory and therefore, on October 13, 2005, Petitioner was sentenced to 60 months' imprisonment.[4]

On October 12, 2006, Petitioner filed a Motion pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct his sentence arguing two grounds.  (Doc. 1).  First, Petitioner claimed his court-appointed attorney, Roland Falcon, provided him with ineffective assistance when he allegedly advised Petitioner not to seek direct appeal, although Petitioner allegedly expressed his desire to do so.  (Doc. 1).  Second, Petitioner argued Mr. Falcon again provided him with ineffective assistance when he failed to advise Petitioner that a conviction for the state DUI charge would adversely affect his sentence in the federal case.  (Doc. 1).  As Judge Corrigan only asked the undersigned to issue a report and recommendation regarding the second ground, the Court will not consider ground one.

## II.  Evidence Presented at the Hearing

During the hearing, Petitioner testified and presented the testimony of Roland Falcon, his court appointed attorney in the federal case and Ronald Newman, Sr.,

---

[3](...continued)
charge with respect to his federal case.  (Doc. 7, Ex. 2).

[4]  Petitioner already had one previous conviction and the state DUI conviction resulted in Petitioner having a total of two criminal history points on his presentence report and thereby rendered him ineligible for the safety valve provisions of 18 U.S.C. §3553(f).

Petitioner's father.  In addition, the Government presented the testimony of Judge William Davis, the attorney representing Petitioner in the state DUI charge.

Mr. Falcon testified that he was appointed to represent Petitioner in his federal case on November 19, 2004.  (Tr. 9:3-11).  During the initial appearance, Mr. Falcon received the pretrial services report which listed Petitioner's criminal history.  (Tr. 10:3-14).  Mr. Falcon referred to his notes, which reflected that he asked Petitioner about the DUI charge at the time of the initial appearance.  (Tr. 10:15-23).  When asked by Petitioner's counsel whether he recalled discussing with Petitioner the affect the state DUI charge may have on the federal case, Mr. Falcon responded that he recalled three conversations regarding the DUI charge.  (Tr. 11:7-8).  The first conversation was at the initial appearance where Mr. Falcon asked Petitioner about the state charges and was informed by Petitioner that the felony charge for possession with intent to deliver had been dropped and that his next court appearance was December 14, 2004.  (Tr. 10:17-23).  The next time Mr. Falcon discussed the state DUI charge with Petitioner was February 1, 2005.  (Tr. 11:10-22).  On that day, there was a hearing before Judge Howard on several motions filed by Mr. Falcon.  Id.  Petitioner called Mr. Falcon at around 7:30 or 8:00 p.m. and they had a forty minute conversation.  Mr. Falcon recalled discussing the DUI charge as well as the motions, however, he did not recall the specifics of the conversations.  Id.  The third time they discussed the DUI charge was on September 21, 2005 when Mr. Falcon visited Petitioner in jail to prepare for the sentencing.  (Tr. 12:25, 13:1).  The two discussed the pre-sentencing report and the two convictions listed on the report.  (Tr. 13:2-14).  Mr. Falcon's notes indicated he

discussed the DUI with Petitioner and Petitioner's claim that he had a prescription for the drugs found in his car and of which he was allegedly under the influence while driving.  (Tr. 13:12-15).  Mr. Falcon denied that he advised Petitioner to plead guilty to the DUI charge to "get it out of the way," stating that he "would not do that."  (Tr. 14:4-7).

Mr. Falcon further testified that from the beginning of his representation of Petitioner, they were headed for trial because Petitioner was not interested in pleading guilty to any of the charges.  (Tr. 22:4-16).  Indeed, Mr. Falcon stated that Petitioner was "adamant that he was not guilty."  (Tr. 24:20-23).[5]  Mr. Falcon stated that he was not thinking about the safety valve because he was preparing for trial.  (Tr. 14:8-13).  Mr. Falcon clarified that neither Petitioner nor anyone in his family ever sought Mr. Falcon's advice regarding the state DUI charge.  (Tr. 25:14-18).  The first time Mr. Falcon heard that Petitioner had plead guilty to the DUI was during the phone conversation with Petitioner on February 1, 2005.[6]  (Tr. 25: 19-25).

Petitioner's father, Ronald Eugene Newman, Sr. also testified.  He stated that he met with Mr. Falcon every time his son met with Mr. Falcon.  (Tr. 32: 21-25, 33:1-2).  According to Mr. Newman, Mr. Falcon told them that it was in Petitioner's best interest to go ahead and plead to the DUI charge and get it out of the way.  (Tr. 35:19-25, 36:1).

---

[5]  Mr. Falcon also testified that his usual practice is to request a plea agreement from the Government to take a look at the factual basis portion of the agreement.  (Tr. 31:3-9).  He did not do that in this case because Petitioner was so unwilling to admit guilt.  (Tr. 30:22-25, 31:1-13).

[6]  Mr. Falcon remembers this conversation because it took place on his birthday, February 1, while Mr. Falcon was at a restaurant having dinner.  (Tr. 11:15-18).

Mr. Newman also stated that Mr. Falcon told them that Petitioner was facing a

mandatory sentence of 60 months regardless of whether he pled guilty to the federal

charges and cooperated.  (Tr. 33:19-24).  On cross examination, Mr. Newman testified

that he was concerned about his son's DUI because it was possibly a violation of his

bond.  (Tr. 38:20-25, 39:1-16).  Mr. Newman testified that he believed the state DUI

arrest was after the arrest in the federal case.  (Tr. 39:17-21).

Petitioner also testified.  He claimed that he asked his attorney in the state DUI

case, William Davis, about whether the state charge would have any affect on the

federal charge.  (Tr. 44:23-25, 45:1-3).  Mr. Davis did not want to give any advice on the

federal case and referred Petitioner to Mr. Falcon.  (Tr. 45:1-8).  Petitioner stated that

he spoke with Mr. Falcon about pleading guilty to the state DUI charge once or twice.

(Tr. 45:16-19).  According to Petitioner, Mr. Falcon said the state charge was irrelevant

because Petitioner was facing a minimum mandatory of 60 months regardless of the

DUI charge.  (Tr. 46:2-8).  Petitioner stated that Mr. Falcon's position was that they

should go to trial because after the Government would not offer him a plea agreement,

he would be facing 60 months if he pled, so he had nothing to lose by going to trial.  (Tr

46:16-22).

On cross-examination, Petitioner testified that he did not plead guilty to the state

DUI charge because he was guilty but rather because he was facing a federal

indictment and the DUI charge seemed "minute" in comparison to the federal charge.

(Tr. 52:25, 53:1-3).  Petitioner also stated that the state charge would be a problem for

him "going to a halfway house" when he got out of prison, so he "pled out to it and just

got it out of the way." (Tr. 53:4-8).  Petitioner also claimed that from the beginning of his

case, he was open to pleading guilty if there was any way to avoid the minimum

mandatory but he was told there was no way to avoid the five year minimum and

therefore, he decided to go to trial.  Later in his testimony, Petitioner clarified that Mr.

Falcon did not advise him to plead guilty to the state DUI charge but rather, Petitioner

believed a mistake was made with respect to his criminal history before the DUI

conviction that led Mr. Falcon to believe Petitioner was ineligible for the safety valve

even before the DUI conviction.  (Tr. 61:2-16).  Accordingly, Mr. Falcon told Petitioner

that the state DUI charge was irrelevant because he was already ineligible for safety

valve relief.  Id.

      After Mr. Newman Sr. and Petitioner testified, counsel for Petitioner called Mr.

Falcon back to the stand.  He asked Mr. Falcon whether, after hearing the testimony of

both individuals, it was possible that a mistake was made with respect to Petitioner's

criminal history points.  (Tr. 62:9-14).  Mr. Falcon explained that when he reviews a

pretrial services report, he is not looking at whether the defendant will qualify for safety

valve relief.  Instead, he is trying to ascertain whether the defendant will be able to be

released or will be held in custody.  (Tr. 63:5-11).  The next time he looks at the criminal

history is shortly before trial when he gets a copy of the defendant's NCIC report so he

will know the history if the defendant testifies.  (Tr. 63:12-15).  Finally, Mr. Falcon looks

at the criminal history in the presentence report in order to ascertain a possible

sentence.  (Tr. 63:15-17).  When asked whether he looked at criminal histories at the

beginning of a case in order to determine if there would be ramifications for sentencing

in a plea deal, Mr. Falcon testified that he has no way of determining what type of sentence a defendant may receive until the presentence report is prepared.  (Tr. 63:18-25).  Mr. Falcon stated he does not think about the safety valve unless and until a defendant decides to plea.  (Tr. 64:3-8).

Finally, William E. Davis, Petitioner's court appointed attorney for the state DUI charge testified.[7]  Judge Davis testified he was appointed to represent Petitioner in two misdemeanor charges, DUI and driving with a suspended license.  (Tr. 68:16-19). Judge Davis reviewed his notes and indicated that the case against Petitioner for DUI was strong.  Additionally, Judge Davis did not recall whether Petitioner or his family ever asked him for any advice regarding the state charge in conjunction with the federal case.  (Tr. 78:3-9).  Judge Davis stated that after reviewing the case and conducting some independent research, he believed a jury would have been "easily persuaded" that Petitioner was "under the influence of something when he was stopped."  (Tr. 80:4-8).  Judge Davis was asked whether it would have been possible to delay the resolution of his state charges until after the sentencing in federal court.  He responded that in county court, most judges try to get their misdemeanor charges disposed of within three to four months.  (Tr. 82:10-16).  Indeed, Judge Davis noted that four months was longer than the speedy trial goal for misdemeanors established by the Florida Supreme Court. (Tr. 82:16-17).  Judge Davis did not believe Petitioner's case would have been continued much longer "without a very, very good reason" and he was not sure a

---

[7] William Davis is presently an Alachua County Court judge.

pending federal charge would have been enough to continue the case for more than an additional sixty days.  (Tr. 82:21-25).  When pressed, Judge Davis stated that perhaps if the federal case were brought to the state court judge's attention early in the state case, the judge would have agreed to continue the DUI trial until the federal case was resolved, however, after the state case had been pending six months, he was not so certain.  (Tr. 87:17-24, 88:1-4).  He testified that as a judge, he would not continue a state case very long because he knows how long federal cases can take.  (Tr. 88:6-9).

### III.  Analysis

Petitioner seeks resentencing on the grounds that Mr. Falcon provided him with ineffective assistance of counsel when Mr. Falcon failed to inform Petitioner that pleading no contest to the state DUI charge would result in a second criminal history point on his presentence report and would therefore, make him ineligible for the safety valve provisions of 18 U.S.C. §3553(f).  Petitioner alleges that but for the criminal history point from the DUI, Petitioner would have been eligible for a sentence below the mandatory minimum and that if he had been aware of the consequences, he would not have pled to the DUI charges.

Relief under § 2255 is reserved for extraordinary situations.  Brecht v. Abrahamson, 507 U.S. 619, 633-34, 113 S.Ct. 1710, 1719 (1993).  To succeed on a § 2255 motion, a convicted defendant must show that the district court sentenced him in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack.  28 U.S.C. §

2255.  In the instant case, Petitioner argues his sentence is invalid as a result of his

attorney's ineffective assistance of counsel.

To prevail on a claim of ineffective assistance of counsel, Petitioner must prove

the two elements as established by Strickland v. Washington, 466 U.S. 668, 104 S.Ct.

2052 (1984).  First, Petitioner must show his attorney's performance was deficient.  This

requires showing that "counsel made errors so serious that counsel was not functioning

as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466

U.S. at 687, 104 S.Ct. at 2064.  In determining whether Petitioner has made this

showing, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at

689, 104 S.Ct. at 2065.

The second element Petitioner must show is "that the deficient performance

prejudiced the defense." Id. at 687, 104 S.Ct. at 2064.  This element requires Petitioner

to demonstrate "a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different." Id. at 694, 104 S.Ct. at 2068.

Because Petitioner must show both deficient performance **and** prejudice, the Court

need not address both components of the Strickland inquiry if Petitioner makes an

insufficient showing on one. Id. at 697, 104 S.Ct. at 2069; Holladay v. Haley, 209 F.3d

1243, 1248 (11th Cir. 2000) (emphasis added).

Petitioner argues his attorney in the federal case was ineffective for failing to

advise Petitioner that if he pled guilty to the state DUI charge, he would be ineligible for

Title 18 U.S.C. § 3553(f) (commonly referred to as "safety valve") relief from sentencing

under the mandatory minimum required by 21 U.S.C. § 841(a)(1) and (b)(1)(B).  (Doc.

1).  The "safety valve" provision of 18 U.S.C. § 3553(f), effectuated by U.S. Sentencing

Guidelines Manual § 5C1.2, allows the district court to depart below the statutory

mandatory minimum sentence for certain drug offenses if the defendant satisfies each

of the five criteria set forth in the statute.  United States v. Harrison, 431 F.3d 1007,

1013 (7th Cir. 2005).  The provision generally applies "where the defendant is a first time

offender who was not the organizer or leader of criminal activity and has made a good

faith effort to cooperate with the government."  Id.  Specifically, 18 U.S.C. § 3553(f)

provides:

> (f) Limitation on applicability of statutory minimums in certain
> cases.-Notwithstanding any other provision of law, in the
> case of an offense under section 401, 404, or 406 of the
> Controlled Substances Act (21 U.S.C. 841, 844, 846) or
> section 1010 or 1013 of the Controlled Substances Import
> and Export Act (21 U.S.C. 960, 963), the court shall impose
> a sentence pursuant to the guidelines promulgated by the
> United States Sentencing Commission under section 994 of
> title 28 without regard to any statutory minimum sentence, if
> the court finds at sentencing, after the Government has been
> afforded the opportunity to make a recommendation, that-
> (1) the defendant does not have more than 1 criminal history
> point, as determined under the sentencing guidelines;
> (2) the defendant did not use violence or credible threats of
> violence or possess a firearm or other dangerous weapon
> (or induce another participant to do so) in connection with
> the offense;
> (3) the offense did not result in death or serious bodily injury
> to any person;
> (4) the defendant was not an organizer, leader, manager, or
> supervisor of others in the offense, as determined under the
> sentencing guidelines and was not engaged in a continuing
> criminal enterprise, as defined in section 408 of the
> Controlled Substances Act; and
> (5) not later than the time of the sentencing hearing, the
> defendant has truthfully provided to the Government all
> information and evidence the defendant has concerning the

-11-

> offense or offenses that were part of the same course of
> conduct or of a common scheme and plan, but the fact that
> the defendant has no relevant or useful other information to
> provide or that the Government is already aware of the
> information shall not preclude a determination by the court
> that the defendant has complied with this requirement.

18 U.S.C. § 3553(f).  In the instant case, Petitioner claims that when he asked Mr.

Falcon whether a no contest plea to the state DUI would have any affect on the federal

case, he was told that the state DUI charge was irrelevant to the federal case.  (Tr.

45:16-25, 46:1-5).  Petitioner further claims that had Mr. Falcon told Petitioner that a

conviction for the state DUI would disqualify him for safety valve relief, he would not

have pled no contest.  Petitioner argues that but for the criminal history point awarded

for the state DUI charge, Petitioner would have qualified for safety valve relief.

The Government responds that Petitioner cannot show either of the Strickland

elements because Petitioner does not contend he ever sought advice from Mr. Falcon

regarding the disposition of the state charge.  (Doc. 7, p.6).  Additionally, the

Government argues Petitioner cannot show prejudice because he has not shown he

would have qualified for safety valve relief.  Specifically, the Government argues

Petitioner is unable to show that "but for his guilty plea to the DUI, he would not

otherwise have had a scorable conviction stemming from that offense prior to his federal

sentencing."  (Doc. 7, p.7).  Finally, the Government takes the position that Petitioner

cannot show he was entitled to safety valve relief because he did not satisfy the fifth

requirement for such relief by providing the Government with truthful information

regarding his participation in the federal crime.  (Doc. 7, p.8).

## A.    <u>Prejudice</u>

The Court will first consider whether Petitioner was prejudiced by Mr. Falcon's

failure to inform him that pleading no contest to the DUI charge would render him

ineligible for safety valve relief.  Regardless of whether Petitioner can show counsel's

performance was deficient, "[a]n error by counsel, even if professionally unreasonable,

does not warrant setting aside the judgment of a criminal proceeding if the error had no

effect on the judgment."  <u>Strickland</u>, 466 U.S. at 691, 104 S.Ct. at 2066.  Petitioner must

demonstrate:

> there is a reasonable probability that, but for counsel's
> unprofessional errors, the result of the proceeding would
> have been different.  A reasonable probability is a probability
> sufficient to undermine confidence in the outcome.

<u>Strickland</u>, 466 U.S. at 694, 104 S.Ct. at 2068.

In this case, Petitioner argues that but for Mr. Falcon's failure to inform Petitioner

of the possible consequences resulting from his DUI conviction, Petitioner would not

have pled no contest to the DUI charges and would have qualified for safety valve relief.

Petitioner's position, however, requires the Court to engage in much speculation.  First,

the Court must assume that had Petitioner qualified for safety valve relief, Judge

Corrigan would have exercised his discretion to reduce Petitioner's sentence pursuant

to the safety valve.  <u>See</u> <u>United States v. Moronta-Matos</u>, 2002 WL 3150185, n.1 (3rd

Cir. 2002) (unpublished) (noting that "application of the 'safety valve' merely permits a

sentence to be imposed below the mandatory minimum. [Petitioner] can not

demonstrate prejudice because the District Court would not necessarily have exercised its discretion to downward depart for this reason.").

Even if the Court assumes Judge Corrigan would have exercised this discretion, Petitioner must still show that absent the plea to the DUI charge, he would have qualified for the safety valve at the time of his sentencing.  Again, this showing requires much conjecture.  First, Petitioner must show that if he had failed to plead no contest to the DUI charge, he still would not have been convicted for that offense.  At the hearing, the Government called Judge Davis, Petitioner's court appointed counsel for the state DUI charge.  Judge Davis testified that the case against Petitioner was strong. According to Judge Davis's notes, the arresting officer observed Petitioner braking erratically, driving into opposing or crossing traffic, responding slowly to traffic signals and accelerating or decelerating rapidly.  (Tr. 70:1-6).  Accordingly, the officer pulled Petitioner over and indicated that Petitioner seemed "extremely under the influence," had very lazy reactions in speech and had very poor balance.  (Tr. 70:7-9).  The officer then had Petitioner perform a variety of field sobriety tests, all of which Petitioner failed. (Tr. 70:10-72:12).

Additionally, the only defense Petitioner had was a possible necessity defense. (Tr. 76:12).  Petitioner claimed that prior to the arrest, he had been battered by a group of men and Petitioner was driving to the sheriff's office in order to report the offense. (Tr. 76:14-17).  Judge Davis explained that this defense had numerous problems, however, because immediately prior to his arrest, Petitioner stopped at a convenience store to purchase cigarettes, which undermined a necessity defense.  (Tr. 76:23-25).  In

addition, while in the convenience store, Petitioner encountered some police officers, but did not report the alleged battery.  (Tr. 77:5-7).  Instead, because he knew his license was suspended at the time, Petitioner lied to the officers and told them he was not driving.  (Tr. 77:1-4).  As he was leaving the store, Petitioner was stopped and the DUI investigation began.  (Tr. 77:8-12).  In addition, Judge Davis noted that had Petitioner attempted to take his case to trial, he could have faced a harsher sentence.[8] (Tr. 80:18-25, 81:1-18).   Accordingly, it was Judge Davis's opinion that it was in Petitioner's best interest to plead <u>nolo</u> <u>contendre</u> to the charge.[9]

Judge Davis was asked whether it would have been possible for Petitioner to postpone the trial in his state DUI case until after the sentencing in the federal case. Judge Davis replied that most misdemeanors go to trial in three to four months.  (Tr. 82:14-16).  Petitioner was arrested June 25, 2004.  He entered his plea to the DUI on January 5, 2005.  The sentencing in the federal case did not occur until October 13, 2005.  Judge Davis did not believe Petitioner's case would have been continued much longer "without a very, very good reason" and he was not sure a pending federal charge would have been enough to continue the case for more than an additional sixty days.

---

[8]  Judge Davis could not be certain because he did not have Petitioner's driving record in front of him, but he believed there was something in Petitioner's history because the sentence Petitioner received was high for a first time offense.  (Tr. 80:18-25, 81:1-18).

[9]  Petitioner does not seem to contest that his chances of winning at trial were slim.  Indeed, Petitioner testified that he did not want to have his DUI charge go to trial because he alleged he was improperly charged with refusing to take a breathalyzer or blood test.  (Tr. 52:11-12).

(Tr. 82:21-25).  Petitioner did not present any evidence to counter Judge Davis's opinion.[10]

Additionally, the Government argues Petitioner cannot show he would have complied with the fifth requirement for safety valve relief, that Petitioner would have "truthfully provided to the Government all information and evidence [he] ha[d] concerning the offense or offenses that were part of the same course of conduct or of a common scheme and plan . . ."  18 U.S.C. § 3553(f).  Petitioner responds that had he known of the possibility he could reduce his sentence, he certainly would have been willing to provide any information regarding the offense to the Government.  (Doc. 20, p.3).  Additionally, Petitioner testified he is presently willing to give a complete and truthful proffer regarding his involvement in the offense.  (Tr. 47:10-17).  Courts are split as to whether this is sufficient to satisfy sub-section 5 of 18 U.S.C. § 3553(f).  Compare United States v. Boothroyd, 403 F.Supp.2d 1011, 1018 (D. Or. 2005) (petitioner was ignorant of the potential advantages for providing truthful disclosure and court found evidence supported "petitioner's argument that he would have made truthful disclosures had he been aware of the safety valve") with United States v. Landsaw, 2006 W.L. 3387852 **3 (10th Cir. 2006) (unpublished) ("Even if [the petitioner] had been given the opportunity to proffer information to the government for safety valve analysis, it is

---

[10]  The Court notes, however, that the trial judge in the state DUI charge, Judge Hobbs, granted the motion for post-conviction relief based on ineffective assistance of counsel and vacated Petitioner's no contest plea in December 2006.  (Doc. 7, Exs. 1 and 2).  He then set the case for trial in November 2007, eleven months later, thereby indicating some willingness to delay the trial in this case for a significant amount of time.

possible that he would not have been awarded safety valve relief under 18 U.S.C. § 3553(f).  The government and the sentencing court may not have believed that Petitioner provided a full and truthful account of his knowledge concerning the offense.").

It is Petitioner's burden to show that he would have qualified for safety valve relief absent his no contest plea.  Brown v. United States, 2006 WL 3359671 *5 (M.D. Ga. 2006) (unpublished) ("[a]s the party seeking the benefit of the safety valve provisions, [petitioner] bears the burden of proving his eligibility") (citing, United States v. Cruz, 106 F.3d 1553, 1557 (11th Cir. 1997)).  The Court believes this is a very close case as to whether Petitioner has met his burden of showing that he would have qualified for safety valve relief and thus, whether he was prejudiced by Mr. Falcon's failure to inform him of the consequences of a no contest plea.  However, the Court finds that it must engage in undue speculation to determine whether Petitioner would have satisfied the requirements for safety valve relief.  While it is certainly possible Judge Hobbs would have agreed to postpone the trial in Petitioner's case, the Court can only engage in speculation.  In addition, whether Petitioner would have satisfied the fifth requirement for safety valve relief by providing a truthful proffer regarding his involvement in the offense again requires the Court to engage in speculation.  The Government pointed out that after the trial and prior to sentencing, Petitioner met with Darlene Galloway, a probation officer, and the presentence report stated that Petitioner

would not admit his guilt to the charge.  (Tr. 56:16-25).[11]  Again, while it is possible

Petitioner would have agreed to give a truthful proffer had he known it would reduce his

sentence, to so find requires the Court to engage in speculation.  In sum, there is simply

insufficient evidence for the Court to find that Petitioner would have been eligible for

safety valve relief at the time of his sentencing and therefore, the Court finds Petitioner

has failed to show prejudice.

### B.   Deficient Performance

Because the Court finds Petitioner was unable to show prejudice, it is not

necessary for the Court to discuss the deficient performance prong of the Strickland

test.  However, because the Court noted the prejudice prong was a close call, the Court

will analyze whether Mr. Falcon's performance was deficient under the Strickland test.

The Eleventh Circuit has noted that "the cases in which habeas petitioners can properly

prevail on the ground of ineffective assistance of counsel are few and far between."

Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v.

Zant, 13 F.3d 384, 386 (11th Cir. 1994)).  The burden of persuasion is on a petitioner to

prove, by a preponderance of competent evidence, that the attorney's performance was

unreasonable.  Chandler v. U.S., 218 F.3d 1305, 1313 (11th Cir. 2000) (citing Strickland,

104 S.Ct. at 2064).  The standard for an attorney's performance is "'reasonableness

under prevailing professional norms." Chandler, 218 F.3d at 1313 (quoting, Strickland,

---

[11]   Petitioner stated he did not recall discussing his innocence or guilt with the probation
officer and that the statement in the presentence report must have simply been part of the report
whenever a defendant goes to trial.  (Tr. 57:7-22).

104 S.Ct. at 2065) and the reasonableness of the challenged conduct must be judged on the facts of the particular case, viewed as of the time of the attorney's conduct. Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993). Further, "[t]he test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. Instead the test is ... whether what they did was within the 'wide range of reasonable professional assistance.'" Chandler, 218 F.3d at 1313, f.n. 12 (quoting, Waters, 46 F.3d at 1511). In determining whether an attorney's performance was reasonable, courts must "'indulge [the] strong presumption'" that the performance was reasonable and that the attorney "'made all significant decisions in the exercise of reasonable professional judgment.'" Chandler, 218 F.3d at 1314 (quoting, Strickland, 104 S.Ct. at 2065-66). Because of this strong presumption of reasonable performance, "the petitioner's burden of persuasion - though [] not insurmountable - is a heavy one." Chandler, 218 F.3d at 1314-15.

In the instant case, Petitioner's claims regarding Mr. Falcon's performance are not particularly straightforward. Petitioner's testimony regarding his conversations with Mr. Falcon contained some inconsistencies. For example, on direct, Petitioner was asked: "[b]efore entering that guilty plea [to the DUI], did you ever talk about that with Mr. Falcon, about whether you should or shouldn't?" and Petitioner responded: "Yes. We discussed it one or two times. Yes." (Tr. 45:16-19).[12]  However, upon further

---

[12]  Additionally, Petitioner's father testified that during meetings between his son and Mr. Falcon, the attorney advised Petitioner to go ahead and plead to the state DUI charge to get it out of the way. (Tr. 35:19-25, 36:1).

questioning by the Court as to Mr. Falcon's assertion that he did not advise Petitioner to

plead guilty to the DUI, Petitioner stated:

> I'm not going to say he told me directly to go run and plead
> guilty.  I'm just saying that he told me it is irrelevant to my
> federal case, you know, go with it as you will.  It's going to be
> irrelevant.  You score out for a minimum mandatory before
> that, before those charges are even on your record.  I
> believe it turned out that a simple mistake was made on my
> NCIC report, to where he scored - - he may have scored a
> couple of charges that did not come back on my PSI as
> being scorable.  I just - - I think that's all it boils down to, is a
> mistake was made on the scoring before the DUI conviction.
> I mean, that's what I believe happened.

(Tr. 60:22-25, 61:1-16).  Accordingly, Petitioner's story with respect to Mr. Falcon's

performance changed from Mr. Falcon advising Petitioner to plead guilty to the state

DUI charge to Mr. Falcon making a mistake regarding Petitioner's criminal history and

improperly determining that Petitioner already had two criminal history points before

considering the state DUI charge.  This change causes the Court some concern,

however, even accepting Petitioner's testimony, the Court does not believe Mr. Falcon's

conduct rises to the level of ineffective assistance.

The Court has no hesitation in stating that a perfect defense attorney certainly

would have informed Petitioner that a conviction for the DUI might have consequences

with respect to the application of the safety valve at sentencing.  However, as stated

above, the test is not what a perfect defense attorney would do, but rather, "whether

what [Mr. Falcon] did was within the 'wide range of reasonable professional

assistance.'"  Chandler, 218 F.3d at 1313, f.n. 12 (quoting, Waters, 46 F.3d at 1511).  In

this case, Petitioner pled no contest to the state DUI charge on January 5, 2005.  The

federal case was in its initial stages.  Petitioner was arrested on November 18, 2004,

the indictment was returned December 1, 2004 and Petitioner was arraigned December

7, 2004.  On December 29, 2004, Mr. Falcon filed a Joint Motion for Continuance in

which the parties asked the Court for an extension of time from December 30, 2004 for

the defendants to file all discovery and dispositive motions.  (See Doc. 22 in 3:04-cr-

337-J-32MCR).  In the motion, Mr. Falcon stated that the attorneys for Petitioner and his

co-defendant were in the process of reviewing the discovery and search warrants and

needed additional time to prepare for challenging the search warrants.  Id.[13]

Accordingly, at the time immediately prior to Petitioner's entry of the no contest plea, Mr.

Falcon was reviewing the discovery and the search warrants.  He was not thinking

about a sentence, but rather was in the process of vigorously defending his client who

was adamant that he was not guilty.  (Tr. 14:8-13, 24:20-23).  Mr. Falcon did not have

the benefit of a presentence report, nor did he have a copy of Petitioner's NCIC report.

(He obtained the NCIC report from the Government's attorney on April 19, 2005 (Tr.

14:19-21)).

        In determining whether Mr. Falcon's performance was reasonable, the Court

"must avoid using 'the distorting effects of hindsight' and must evaluate the

reasonableness of counsel's performance 'from counsel's perspective at the time.'"

Chandler, 218 F.3d at 1316 (quoting, Strickland, 104 S.Ct. at 2065).  It is very tempting

to find counsel's conduct flawed using the benefit of hindsight, especially considering

---

        [13]   The Court granted the motion and gave the defendants and extension of time until
February 1, 2005 in which to file all motions.  (See Doc. 25 in 3:04-cr-377-J-32MCR).

that the no contest plea to the state charge was later withdrawn on the basis of

ineffective assistance of counsel.  However, the Court cannot do so.  Instead, the Court

must keep in mind that when Mr. Falcon is accused of having failed to inform Petitioner

of the consequences of a conviction for the state DUI charge, it was in the early stages

of the case, well before a presentence report was issued.

     This case is distinguishable from the other cases the Court found in which an

attorney's performance was found deficient for failing to pursue safety valve relief.  In

those cases, the attorneys engaged in their deficient performance at the sentencing

stage, after having the benefit of receiving the presentence report.  See Boothroyd, 403

F.Supp.2d at 1016 (court found attorney's performance deficient for failing to investigate

whether petitioner was eligible for safety valve relief at sentencing phase.  The attorney

assumed the firearms found at petitioner's residence rendered him ineligible and did

conduct any investigation into whether petitioner could still qualify for the safety valve.);

Garcia v. United States, 301 F.Supp.2d 1275 (D. N.M. 2004) (counsel failed to object to

a miscalculation in the presentence report which rendered petitioner ineligible for the

safety valve).

     In the instant case, any discussion between Mr. Falcon and Petitioner prior to the

entry of his plea in the state case occurred very early in the federal case and well before

Mr. Falcon had a copy of the presentence report.  Considering the circumstances, Mr.

Falcon's failure to warn Petitioner of the safety valve consequences of a no contest plea

does not rise to the level of ineffective assistance of counsel.  Moreover, if, as Petitioner

contends, Mr. Falcon made a mistake regarding Petitioner's criminal history points, the

Court again finds this insufficient to constitute ineffective assistance of counsel as it occurred early in the case before Mr. Falcon had the benefit of the presentence report. While the Court is sympathetic to Petitioner's position, it simply does not find Petitioner has satisfied the heavy burden of showing ineffective assistance of counsel.

Accordingly, after due consideration, it is

**RECOMMENDED**:

Ground 2 of Petitioner's Motion pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (Doc. 1) be **DENIED**.  The Clerk is directed to **VACATE** the original Report and Recommendation (Doc. 36).

**DONE AND ENTERED** at Jacksonville, Florida this  18th  day of October, 2007.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Honorable Timothy J. Corrigan,
United States District Judge

Counsel of Record